IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW MCCLOSKEY et al., : | |
| Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. 15-6210 |
| : | |
| WESTFIELD INSURANCE COMPANY, : | |
| Defendant. : | |

### MEMORANDUM OPINION

RUFE, J.                                                                                                           NOVEMBER 18, 2016

Before the Court is the Motion for Summary Judgment of Defendant Westfield Insurance Company (Doc. No. 18), the insurer of Plaintiffs Andrew and Jenny McCloskey.[1] Defendant argues that Plaintiffs elected a "limited-tort option" that prevents them from recovering non-economic damages under their insurance policy unless one of them suffers a "serious injury," and cannot show that Mr. McCloskey suffered such an injury in a 2013 car accident. For the reasons that follow, the motion is denied.

I.   BACKGROUND

On September 9, 2013, Mr. McCloskey was driving when he collided with an intoxicated driver, Stephen Aigeldinger, at a speed of approximately 20-30 miles per hour.[2] Mr. McCloskey believes that he lost consciousness on impact,[3] but was able to extricate himself from the vehicle

---

[1] The parties have not complied with the Court's Policies and Procedures for Summary Judgment, as they were expressly directed to do. Doc. No. 6 at 2 (Scheduling Order). Under those procedures, Defendant, the moving party, was required to "provide a separate, concise Statement of Stipulated Material Facts." *Id.* at 3 (emphasis in original). Instead, Defendant filed a brief which included no stipulated material facts, and instead featured a "Brief Overview of Plaintiffs' Claims" and an "Argument" section that recited Defendant's version of the facts, but appear not to have been sent to or reviewed by Plaintiffs before filing. Defendant's failure to follow the Court-ordered process is inappropriate, and as explained in more detail below, lends support to the conclusion that there are material facts in dispute. Nonetheless, the Court resolves the motion on the as-filed papers.

[2] Doc. No. 18-1 (Exhibits to Defendant's Motion for Summary Judgment), Ex. A (Sept. 9, 2013, EMS Report); Ex. B (ED Final Report); Exhibit F (Deposition Transcript of Andrew McCloskey) at 31:16-32:10.

[3] *Id.*, Ex. F at 35:5-37:18.

and was found sitting by the side of the road by the responding medical team, to whom he reported as his chief complaint that his "arm fe[lt] weird."[4] Mr. McCloskey was then taken to Bryn Mawr Hospital for an evaluation.[5] According to the "History of Present Illness" report prepared that day, Mr. McCloskey had "no numbness, dizziness, loss of vision . . . . No difficulty breathing, weakness, headache, nausea or abdominal pain. No vomiting."[6] The report also stated that Mr. McCloskey's head was "non-tender," had "[n]o swelling," and "[n]o Battle's sign or raccoon eyes."[7] And contrary to Mr. McCloskey's recollection, the report stated that he suffered "no loss of consciousness" during the accident.[8] Mr. McCloskey was discharged the same day in "good" condition, and reported his "pain level on departure as 1 [out of] 10." [9]

Three days later, on September 12, 2013, Mr. McCloskey sought treatment from his primary physician, Dr. Matthew Miller.[10] For the most part, Dr. Miller's report was consistent with the prior documentation of Mr. McCloskey's injuries, and Dr. Miller found "[n]o severe dizziness, new hearing loss . . . eye pain or blurred vision" and reported that Mr. McCloskey "denied significant depression, anxiety, [and] insomnia."[11] However, Dr. Miller also diagnosed Mr. McCloskey with "Postconcussion syndrome – primary," and reported that Mr. McCloskey had been "feeling fog[g]y and sl[ightly] dizzy" since his discharge.[12]

---

[4] *Id.*, Ex. A.

[5] *See id.*, Ex. A. at 4. All page numbers to exhibits reflect ECF pagination, except for citations to deposition transcripts, which are to the page and line numbers of the transcripts themselves.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.* at 9.

[10] *See id.*, Ex. C.

[11] *Id.* at 12.

[12] *Id.* at 13.

2

Mr. McCloskey then began seeking treatment for cognitive issues, including headaches, dizziness, short term memory loss, fatigue, insomnia, depression, and blurred vision—symptoms that one of Plaintiffs' proposed experts, Dr. Rhee, attributes to a concussion Mr. McCloskey sustained in the accident.[13] The McCloskeys have testified that these symptoms have worsened over the past three years, and have taken a toll on Mr. McCloskey's work and personal life.[14] In particular, Mr. McCloskey's work as a financial advisor has become more difficult for him, as he has difficulty concentrating, and has missed "at least one month" of work due to his injuries.[15] Mr. McCloskey has also been forced to cut back on social and community activities. Specifically, he has resigned as Chairman of the Board of Waldron Mercy Academy, withdrawn from the Board of Governors of his alma mater, and limited his volunteer work and business development efforts.[16] Mr. McCloskey's depression has strained his relationship with his wife as well, as he can become irritable, has difficulty taking care of their children, and sometimes stays in bed for up to twenty-four hours at a time.[17]

As Mr. McCloskey's symptoms persisted, the McCloskeys pursued a lawsuit against Aigeldinger, the intoxicated driver, in state court. That case settled for $100,000 in April 2015, the full value of Aigeldinger's insurance policy.[18] The McCloskeys believed that this did not fully compensate them for Mr. McCloskey's injuries, however, and filed an underinsured

---

[13] Doc. No. 19 (Plaintiff's Response to Defendant's Motion for Summary Judgment), Doc. No. 19-1, Ex. A (Medical Narrative Report of Michael Rhee).

[14] *See, e.g.*, Doc. No. 18-1, Ex. F at 59:10-80:6 (describing symptoms following the accident); Doc. No. 19-9, Ex. E at 18:11-49:11 (Deposition Transcript of Jenny McCloskey) (describing symptoms following the accident).

[15] *E.g.*, Doc. No. 18-1, Ex. F at 58:11-20 (Mr. McCloskey testifying that he missed "at least one month and not more than two years" of work following his injuries); *id.* at 90:2-91:3 (testifying that he has difficulty with "clear mental thinking," which is "very important" to his work).

[16] *Id.* at 65:3-66:9 (testifying that, after the accident, "I resigned as chairman of the board of Waldron Mercy Academy. I've . . . stopped volunteering at my church . . . . I stopped going to board of governor meetings at my alma mater. . . . I've also very much reduced my networking/business development activities . . . .").

[17] Doc. No. 19-9, Ex. E at 23:19-49:11.

[18] Doc. No. 18 at 3.

motorist claim with Defendant for $500,000, alleging that the above problems stemmed from Mr. McCloskey's accident and were covered by their insurance policy.[19] After some back-and-forth, Defendant denied Plaintiff's claim, and Plaintiff filed suit in the Court of Common Pleas of Philadelphia, bringing claims for breach of contract, bad faith, and loss of consortium.[20] Defendant then removed the case to federal court, alleging diversity jurisdiction under 28 U.S.C. § 1332.[21] Defendant now moves for summary judgment, arguing that the limited-tort option bars coverage.

## II. LEGAL STANDARD

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[23] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[24]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[25] Further, a court may not weigh the evidence or make credibility determinations.[26] Nevertheless, the party opposing summary judgment must support each essential element of the opposition

---

[19] *See* Doc. No. 1 (Notice of Removal), Ex. A (Complaint) ¶ 23.

[20] *See id.* ¶¶ 24-39 (alleging that Defendant denied Plaintiffs' claims), 43-51 (breach of contract), 52-57 (bad faith), 58-60 (loss of consortium).

[21] *See id.* at 5.

[22] Fed. R. Civ. P. 56(a).

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[24] *Id.*

[25] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[26] *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

with concrete evidence in the record.[27] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[28] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[29] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[30] "In a diversity case, when faced with a motion for summary judgment, the federal courts follow federal law on issues of procedure but apply the substantive rule of decision from state law."[31]

## III.   DISCUSSION

The parties agree that Pennsylvania substantive law governs this dispute. Under the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), "drivers can choose to be insured under a 'limited tort' plan or a 'full tort' plan."[32] "Under the limited tort option, consumers, in exchange for a lower premium, generally waive their right to maintain an action for any noneconomic loss except, inter alia, in the case of a 'serious injury.'"[33] Plaintiffs, having selected the limited-tort option in their policy with Defendant, must be able to show that Mr. McCloskey sustained a "serious injury," which the MVFRL defines as "[a] personal injury

---

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[28] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[29] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[30] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[31] *Peterman v. Sakalauskas*, 978 F. Supp. 2d 439, 443 (E.D. Pa. 2013) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

[32] *Grondecki v. Axiom Mgmt., Inc.*, 158 F. Supp. 3d 345, 351 (E.D. Pa. 2016) (citing 75 Pa. Cons. Stat. § 1705).

[33] *Grondecki*, 158 F. Supp. 3d at 351 (citing 75 Pa. Cons. Stat. § 1705(d)). Specifically, the MVFRL provides that "[u]nless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss," except in the case of certain circumstances not relevant here. 75 Pa. Cons. Stat. § 1705(d).

resulting in death, serious impairment of body function or permanent serious disfigurement."[34] Because Plaintiffs do not allege that Mr. McCloskey suffered death or permanent serious disfigurement, the Court considers only whether Plaintiffs can show that he suffered a "serious impairment of body function."

The key case on determining any kind of serious injury in the summary judgment context is *Washington v. Baxter*.[35] In *Washington*, the Pennsylvania Supreme Court carefully examined the text and legislative history of the MVFRL, and concluded that the determination of whether a plaintiff had suffered a serious injury "was not to be made routinely by a trial court judge . . . but rather was to be left to a jury unless reasonable minds could not differ on the issue of whether a serious injury had been sustained."[36] The court then affirmed a grant of summary judgment for the defendant, finding that the plaintiff had not suffered a serious injury to his foot during a car crash because the "only aspect of [plaintiff's] life to which [plaintiff] could point to as being changed as a result of the accident was that he could no longer use a lawn mower that had to be pushed, but instead [had to] use a riding mower."[37] The court explained that this limitation was too minor to support a conclusion that the plaintiff had suffered a serious impairment of body function, and that the plaintiff therefore had failed to put forward evidence sufficient to bring the case to a jury.[38]

Defendant argues that here, like in *Washington*, Plaintiffs have failed to produce sufficient evidence to show that Mr. McCloskey suffered a serious injury. There are two problems with this argument: first, it would require the Court to resolve factual disputes

---

[34] 75 Pa. Cons. Stat. § 1702.

[35] 719 A.2d 733 (Pa. 1998).

[36] *Id.* at 740.

[37] *Id.* at 736, 741.

[38] *Id.* at 741.

regarding the extent of Mr. McCloskey's injuries, contrary to Federal Rule of Civil Procedure 56; second, unlike in *Washington*, reasonable minds could differ as to whether Mr. McCloskey suffered a serious injury based on the current record.

### A. The Court Cannot Resolve Factual Disputes on a Summary Judgment Motion

First, summary judgment is inappropriate because the record is rife with material factual disputes regarding the extent and effect of Mr. McCloskey's injuries. Although few federal courts have decided a summary judgment motion under *Washington*, it is clear that as a threshold matter, the Court "must first determine whether under federal law a genuine dispute of material fact exists regarding the injuries and impairments alleged" before considering whether Plaintiffs can show a serious injury under the MVFRL.[39]

Here, the parties dispute even the most basic material facts, including whether Mr. McCloskey suffered a brain injury at all. Plaintiffs claim that he did,[40] whereas Defendant argues that Mr. McCloskey's symptoms are either exaggerated or attributable to factors other than the accident, such as general anxiety.[41] The parties have submitted dueling expert reports on this issue,[42] and the Court cannot weigh this competing testimony on a summary judgment motion.[43]

---

[39] *Peterman*, 978 F. Supp. 2d at 443-44.

[40] Doc. No. 19 at 7-10.

[41] Doc. No. 18 at 5-7; Doc. No. 20 (Defendant's Reply in Support of Motion for Partial Summary Judgment) at 6-8.

[42] Defendant offers the opinion of Dr. Idit Trope, a neuropsychologist, that Mr. McCloskey "does not have any ongoing cognitive sequelae from the 9/9/13 motor vehicle accident" and that "[i]t is not clear how what was no more than a peripheral injury (non-brain related), with no evidence of any traumatic brain injury or any cognitive sequelae, escalated over time" to produce Mr. McCloskey's alleged symptoms. Doc. No. 18-1, Ex. G at 77. Plaintiff, in turn, offers: (1) the opinion of psychiatrist Michael Rhee, M.D., that "Mr. McCloskey's ongoing concussion related issues including headaches, insomnia, depression, and cognitive issues are causally related to the injuries he sustained in the motor vehicle accident of 9/9/13," Doc. No. 19-1, Ex. A at 4; (2) the opinion of psychiatrist Kenneth J. Weiss, M.D., that "Mr. McCloskey has the conditions of concussion, depression, anxiety, headache, and cognitive impairment (memory and attention)" and that "[t]he crash was a substantial factor in bringing about these conditions," Doc. No. 19-2, Ex. B at 12; and (3) the opinion of Sherry Tucker, a Master of Social Work, that Mr. McCloskey's symptoms have "interfered with his ability to work as well as to function as a

7

The parties also dispute the extent to which Mr. McCloskey's alleged brain injury has affected his professional life. Plaintiffs have testified that Mr. McCloskey missed at least one month of work as a result of the accident and that his performance has suffered; Defendant counters that Mr. McCloskey has become "significantly more productive following the accident," based on tax returns showing increased income in 2014, and that Plaintiffs' testimony regarding Mr. McCloskey's problems at work is too vague to be credited.[44] Resolving these disputes is necessary to determine whether Mr. McCloskey suffered a serious injury, but the Court cannot do so without impermissibly weighing the evidence and making credibility determinations.[45] Summary judgment is therefore inappropriate.[46]

### B. Reasonable Minds Could Differ Regarding Whether Mr. McCloskey Suffered a Serious Injury

Second, even assuming these factual disputes could be brushed aside as non-material, summary judgment is inappropriate because, interpreting the evidence in the light most favorable to Plaintiffs (as the Court must), Plaintiffs may be able to show that Mr. McCloskey suffered a serious injury in the form of a serious impairment of body function. To establish such an injury,

---

father and husband in the way that he was able to do before the accident." Doc. No. 19-3, Ex. C, at 2. At this time, neither party has raised a challenge to any expert under Federal Rule of Evidence 702.

[43] *See Miracle Temple Christian Acad. v. Church Mut. Ins. Co.*, Civil Action No. 12-0995, 2013 WL 820588, at *5 (E.D. Pa. Mar. 6, 2013) (denying defendant insurance company's motion for summary judgment where "[c]ompeting expert testimony create[d] a material issue of fact on the amount of damage" to the property at issue).

[44] Doc. No. 20 at 6-8.

[45] *See, e.g.*, *McDowell v. Sheerer*, 374 F. App'x 288, 294 (3d Cir. 2010) (reversing district court's grant of summary judgment for defendant because the court "relied on its own interpretation of arguably ambiguous testimony" and therefore "erred by acting as a finder of fact rather than accepting all inferences in favor of" plaintiff). *Cf. Bursuc v. Hegarty*, Civil No. 09-5620 (NLH) (AMD), 2012 WL 395139, at *3 (D.N.J. Feb. 7, 2012) (denying defendant's motion for summary judgment and explaining that "the Court also cannot find that plaintiff's witnesses are not credible, as that credibility determination is also for a jury").

[46] In addition to asking the Court to wade into factual disputes on a summary judgment motion, Defendant's brief also appears to misstate the record in certain places. For example, Defendant argues that Mr. McCloskey did not suffer a serious injury because "he participated in a two-day [golf] tournament at his local club on September 6-7, 2013, just three days following the subject accident," citing to pages 99 and 100 of Mr. McCloskey's deposition testimony. Doc. No. 18 at 7. But the cited portion of the transcript says nothing of the sort, and even if it did, Mr. McCloskey's accident occurred on September 9, 2013, rendering Mr. McCloskey's participation in a golf tournament three days earlier irrelevant.

Plaintiff must show (1) "[w]hat body function, if any, was impaired because of injuries sustained in a motor vehicle accident" and (2) "[w]as the impairment of the body function serious."[47] The Court considers several factors to determine if the injury is serious: "(1) the extent of the impairment, (2) the length of time the impairment lasted, (3) the treatment required to correct the impairment, and (4) any other relevant factors."[48]

Here, Plaintiffs have put forward proposed expert opinions that Mr. McCloskey suffered a traumatic brain injury, that his current symptoms are caused by that injury, and that he now suffers mental impediments that interfere with his day-to-day activities.[49] One of Plaintiffs' proposed experts, Dr. Weiss, has opined that Mr. McCloskey will likely continue to suffer these symptoms for the foreseeable future and will require psychotherapy and psychiatric care to cope with his condition.[50] Plaintiffs have thus put forward evidence that Mr. McCloskey suffered a brain injury, that the injury has negatively affected his work and social life for the past three years and will continue to do so, and that Mr. McCloskey will require ongoing treatment to deal with the headaches, fatigue, and other cognitive symptoms he experiences.

These opinions are corroborated by Plaintiffs' testimony. Both Plaintiffs testified that, since the accident, Mr. McCloskey has become depressed and anxious, has difficulty concentrating and sleeping, and that his work, social life, and community activities have all suffered as a result. Taking the McCloskeys at their word, there is some tangible evidence of this: Mr. McCloskey has had his hours reduced, has difficulty remembering when he has meetings scheduled with clients, has had to curtail his community involvement, and generally

---

[47] *Peterman*, 978 F. Supp. 2d at 443-44 (quoting *Washington*, 719 A.2d at 740).

[48] *Graham v. Campo*, 990 A.2d 9, 16 (Pa. Super. Ct. 2010) (quoting *Long v. Mejia*, 896 A.2d 596, 600 (Pa. Super. Ct. 2006)) (alterations omitted).

[49] *See* Doc. No. 19-1, Ex. A; Doc. No. 19-2, Ex. B; Doc. No. 19-3, Ex. C.

[50] *See* Doc. No. 19-2, Ex. B at 13.

has difficulty functioning in everyday life.[51] To be sure, some of the McCloskeys' testimony is vague (Mr. McCloskey's testimony that he missed "at least one month and not more than two years" of work)[52] and some appears inconsistent with other record evidence (Mrs. McCloskey's claim that Mr. McCloskey's income has decreased is called into doubt by his tax returns).[53] But under Pennsylvania law, these are issues for a jury to consider, and the Court cannot conclude, as a matter of law, that reasonable minds could not differ regarding whether Mr. McCloskey suffered a serious injury.[54]

Defendant argues that summary judgment is nonetheless warranted because Plaintiffs have not put forward any "objective" evidence that Mr. McCloskey suffered a serious injury, relying on the Pennsylvania Superior Court's decision in *McGee v. Muldowney*.[55] According to Defendant, Plaintiff's evidence, which includes the opinions of two psychiatrists, is not "objective" because it is based largely on Mr. McCloskey's reports of his symptoms, and therefore is insufficient to stave off summary judgment. However, at least one Pennsylvania court has found that the opinion of a psychiatrist regarding a plaintiff's cognitive impairments can provide sufficient evidence of a serious injury to survive summary judgment.[56] This is

---

[51] *See* Doc. No. 18-1, Ex. F at 17:4-12, 58:11-20 (Mr. McCloskey testifying regarding reduced hours and work capacity); 65:3-66:9 (testifying regarding reduced community involvement); 71:17-72:22 (describing suffering from a "fuzziness" and having difficulty remembering when he has scheduled meetings with clients); 73:6-14 (testifying that he has "not been effective in managing [his] schedule" since the accident).

[52] *See id.* at 58:11-20.

[53] *See* Doc. No. 18-1, Ex. E (Mr. McCloskey's tax returns for 2012 through 2014). Mr. McCloskey's tax returns show an increase in self-employment earnings of over $150,000 between 2012 and 2014. However, it is not clear whether Mr. McCloskey's income has since declined, or whether Mr. McCloskey would have earned more absent his alleged injuries, so the fact that Mr. McCloskey earned more in 2014 than in 2012 does not, by itself, dictate the conclusion that Mr. McCloskey did not suffer a serious injury.

[54] *See Hames ex rel. Hames v. Phila. Hous. Auth.*, 737 A.2d 825, 829-30 (Pa. Commw. Ct. 1999) (reversing grant of summary judgment for defendant where the plaintiff submitted affidavits from a psychiatrist that she suffered a severe brain injury in a car accident, and the defendant's arguments amounted only to "attacks upon the weight and credibility of the evidence," which could "not be resolved on a motion for summary judgment").

[55] Doc. No. 20 at 4-5 (citing *McGee v. Muldowney*, 750 A.2d 912 (Pa. Super. Ct. 2000)).

[56] *See Hames*, 737 A.2d at 829-30.

consistent with *Washington*, which explained that "[g]enerally, medical testimony will be needed to establish the existence, extent and permanency of the impairment . . . ."[57] Here, Plaintiffs have provided such testimony from two psychiatrists, both of whom based their testimony on evaluations of Mr. McCloskey or a review of his medical records, as well as his subjective assessments of his symptoms.[58] This evidence could lead reasonable minds to differ regarding whether Mr. McCloskey sustained a serious injury.

Furthermore, *McGee*, upon which Defendant relies, is inapposite. There, the Superior Court affirmed a grant of summary judgment for the defendant because the plaintiff failed to establish that the back and shoulder injuries he sustained in a car accident were serious injuries.[59] But in *McGee*, the plaintiff had barely sought medical treatment for his injuries for a period of five-and-a-half years, and provided no evidence that his injuries negatively affected his employment as an electrician, or that his employer was even aware of them.[60] Here, Mr. McCloskey has consistently sought treatment for his injuries, and Plaintiffs have provided evidence that his injuries have hampered his ability to work as well as other aspects of his life. Unlike in *McGee*, Plaintiffs have provided evidence that Mr. McCloskey suffered a serious injury and Defendant merely disputes the weight that this evidence should be granted. Summary judgment is therefore not warranted.

## IV.   CONCLUSION

For the reasons stated above, Defendant's motion will be denied. An appropriate Order will follow.

---

[57] *Washington*, 719 A.2d at 740.

[58] *See* Doc. No. 19-1, Ex. A at 2; Doc. No. 19-2, Ex. B at 2.

[59] *McGee*, 750 A.2d at 915.

[60] *Id.* at 914-15.